713 S.E.2d 617

**In the Matter of Mark Felker DAHLE, Respondent.**

**No. 27010.**

Supreme Court of South Carolina.

Submitted June 28, 2011.

Decided July 25, 2011.

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Richard J. Breibart, of The Law Firm of Richard Breibart, LLC, of Lexington, for respondent.

PER CURIAM.

This attorney disciplinary matter is before the Court pursuant to the reciprocal disciplinary provisions of Rule 29, RLDE, Rule 413, SCACR.

Respondent is a member of the South Carolina Bar and the Florida Bar.[1] On July 26, 2010, the Supreme Court of Florida suspended respondent from the practice of law for one (1) year upon adoption of the uncontested report of the referee accepting respondent's Conditional Guilty Plea for Consent Judgment. *In the Matter of Dahle,* 42 So.3d 800 (2010). A copy of the Conditional Guilty Plea for Consent Judgment is attached.[2]

Pursuant to Rule 29(a), RLDE, the Office of Disciplinary Counsel (ODC) notified the Court of respondent's suspension by the Supreme Court of Florida.[3] In accordance with Rule 29(b), RLDE, the Clerk provided ODC and respondent with thirty (30) days in which to inform the Court of any reason why the imposition of identical discipline was not warranted in South Carolina.

ODC filed a response stating it had no information that would indicate the imposition of identical discipline was not warranted. Respondent did not file a return.

Rule 29(d), RLDE, provides that the Court shall impose the identical discipline imposed in another jurisdiction unless the attorney or ODC demonstrate or the Court finds that "it clearly appears upon the face of the record from which the discipline is predicated" that the identical discipline is improper for several stated reasons. "In all other aspects, a final adjudication in another jurisdiction that a lawyer has been guilty of misconduct ... shall establish conclusively the misconduct ... for purposes of a disciplinary ... proceeding in this state." Rule 29(e), RLDE.

After thorough review of the record, we conclude that a one (1) year suspension from the practice of law is the appropriate sanction and hereby suspend respondent from the practice of law in this state for one (1) year. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the

---

1. Respondent resides in Florida.

2. This Court's file contains a copy of the dated and signed Conditional Guilty Plea for Consent Judgment.

3. Respondent did not notify ODC of his suspension in Florida as required by Rule 29(a), RLDE.

Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.

ATTACHMENT

IN THE SUPREME COURT OF FLORIDA

(Before a Referee)

THE FLORIDA BAR, Complainant,

v.

MARK FELKER DAHLE, Respondent.

Case No. SC10–94

[TFB Case Nos.2009–30,683(10B); 2010–30,006(10B) ]

### *CONDITIONAL GUILTY PLEA FOR CONSENT JUDGMENT*

COMES NOW, the undersigned Respondent, Mark Felker Dahle, and files this Conditional Guilty Plea to the formal Complaint filed herein. This plea is filed pursuant to R. Regulating Fla. Bar 3–7.9(b).

1. Respondent is acting freely and voluntarily in this matter.

2. The disciplinary measures to be imposed upon Respondent are as follows:

 A. One-year suspension from the practice of law; and,

 B. Payment of costs, as set forth more fully herein.

3. This plea is based on the following factual scenarios:

### *COUNT I*

#### [TFB Case No.2009–30,683(10B) ]

A. In February 2004, Janie Bell Burch died intestate. One daughter, Rochelle Brown survived her. Ms. Brown had seven adult daughters: one of whom was Johnnie Mae Glover.

B. After Ms. Burch's death, a claim for nursing home neglect settled for $93,000. After payment of attorney's fees to the personal injury attorney and costs there was $55,861 net to the estate. However, the $93,000 was a part of the gross estate for purposes of calculation of probate attorney's fees.

C. In addition, the probate estate consisted of a homesteaded house valued at $45,000 and furniture and furnishings valued at $5,000.

D. Ms. Glover, decedent's granddaughter, was appointed Personal Representative (hereinafter referred to as "PR"). The PR signed an attorney's fee agreement with Respondent.

E. The settlement funds were collected and deposited into Respondent's IOTA trust account.

F. On June 30, 2004, Respondent was paid $3,000 in legal fees and $550 for costs.

G. On July 14, 2004, Respondent was paid another $3,800 in attorney's fees from trust. Respondent provided Ms. Glover with supplemental invoices, dated July 15, 2004, reflecting fee charges for extraordinary services.

H. On October 19, 2004, the claims period ended. Seven claims totaling $51,006.23 were received.

I. Over the next 19 months, Respondent was paid an additional $25,710 in attorney's fees.

J. On or about the date of each additional payment, Respondent obtained Ms. Glover's consent for the payment and signature upon a new fee contract reflecting extraordinary work performed for that additional fee.

K. By June 2006, Respondent compromised the Medicaid claim to $7,020.76. Six other claims remained unpaid. Respondent was paid $32,510 in attorney's fees.

L. In December 2006, Ms. Brown hired attorney Matthew D. Ellrod. Mr. Ellrod disputed Respondent's legal fee on behalf of Ms. Brown.

M. To settle the disputed legal fee, Respondent arranged for the estate to be reimbursed $30,000 by his insurance carrier.

## *COUNT II*
### [TFB Case No.2010–30,006(10B) ]

N. In June 2009, Respondent self-reported his conduct in violation of the Rules Regulating The Florida Bar, arising during his representation of Lorraine Smith, niece of Aurelia Abelene McKinney, relative to Ms. Kinney's estate.

O. In or about 1991, Ms. McKinney and her husband obtained estate-planning documents. Ms. McKinney's husband died in 1992.

P. On December 4, 1995, Ms. McKinney consulted with Respondent to have him review her estate planning. Among other documents, Ms. McKinney provided Respondent with 2 revocable living trust documents. One revocable living trust appeared to be executed validly on its face. Respondent was advised that the notary and at least one witness were not present when Ms. McKinney and her husband signed the document. The second revocable living trust was facially not validly executed.

Q. Between 1995 and 2006, Respondent provided estate-planning services to Ms. McKinney. According to Respondent, Ms. McKinney did not want her son, Gerald Lee McKinney, to know about her estate planning. In 1995, she disinherited her son in favor of her niece, Lorraine Smith.

R. In 1995, Respondent prepared a new trust and pour over will for Ms. McKinney.

S. Following Ms. McKinney's death in 2006, seven annuities were paid over to Ms. Smith.

T. In December 2006, Ms. Smith gave Ms. McKinney's son $60,000. Ms. Smith was under no obligation to do so.

U. Ms. McKinney's 1995 will was filed in or about August 2006.

V. In April 2008, Michael D. Minton, an attorney with Dean Mead, inquired about the status of the McKinney Estate planning on behalf of Ms. McKinney's son. Respondent provided a copy of Ms. McKinney's 1995 trust and will.

W. On July 17, 2008, a demand for a copy of the 1991 trust document was received from Joel C. Zwemer, another attorney with Dean Mead, on behalf of the son.

X. Respondent met with Ms. Smith and advised her that she could: 1) provide both trust documents; 2) provide nothing; 3) provide the trust document that appeared properly executed; or, 4) provide the trust document that did not appear to be executed properly.

Y. On July 28, 2008, Respondent and Ms. Smith elected to give the facially insufficient trust document to Mr. Zwemer. At that time, Respondent did not disclose the existence of the trust document that appeared facially sufficient.

Z. When Respondent and Ms. Smith learned of the potential lawsuit by the son against the estate, Ms. Smith hired Attorney Daniel Allison Carlton from Sarasota to represent her in any litigation.

AA. Neither Respondent nor Ms. Smith advised Mr. Carlton of the second, apparently sufficient trust agreement until June 2009. Respondent continued to maintain his legal conclusion that the second, apparently sufficient trust agreement was not a valid trust in that it was not executed with the formal requirements of the law.

BB. In August 2008, an estate was opened, naming Ms. Smith as Personal Representative.

CC. On or about November 4, 2008, Respondent met with Mr. Carlton, Ms. Smith and attorneys with Dean Mead. At that meeting, Respondent learned that Mr. Zwemer had filed an Amended Complaint on November 4, 2008.

DD. Thereafter, Mr. Carlton filed a motion to dismiss, arguing, in part, that the plaintiffs failed to state a cause of action.

EE. In the estate matter, the plaintiffs brought a petition to remove Ms. Smith as Personal Representative and to remove Respondent as attorney for the estate.

FF. The hearing on Mr. Carlton's motion to dismiss was held on June 1, 2009. In part, Mr. Carlton argued that the copy of the 1991 trust document appended to the complaint was invalid.

GG. On June 1 or 2, 2009, Respondent revealed the second trust document to Mr. Carlton for the first time. Respondent revealed the second trust document, as he did not want to

perpetuate a fraud through Mr. Carlton's arguments that were based without his knowledge of the second trust.

HH. Upon learning of the second trust, Mr. Carlton advised the judge and opposing counsel of the existence of the second trust.

II. Respondent through his counsel immediately notified The Florida Bar of his conduct and voluntarily provided a sworn statement to Bar Counsel as to his conduct.

4. The Respondent admits that by reason of the foregoing he has violated the following Rules Regulating The Florida Bar: 4–1.5(a) A lawyer shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee; 4–3.4(a) A lawyer shall not unlawfully obstruct another party's access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding; nor counsel or assist another person to do any such act; and, 4–4.1(a) In the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person.

5. Factors and considerations of mitigation relevant to the discipline include the following:

A. Respondent has no prior disciplinary history [9.32(a)].

B. Respondent has suffered from personal and family health-related problems. [9.32(c)].

C. Restitution made in Count I. [9.32(d)].

D. Respondent self-reported the conduct detailed in Count II, and he has been cooperative throughout this disciplinary proceeding [9.32(e)].

E. Respondent provided affidavits from members of his religious community attesting to his good character [9.32(g)].

F. Respondent's stress related issues, arising from personal and family health-related problems, have impaired his judgment and decision-making, for which he has sought and received treatment [9.32(h)].

G. Respondent has expressed remorse for his misconduct [9.32(*l*)].

6. Factors and considerations of aggravation relevant to the discipline include the following:

 A. Multiple offenses [9.22(d) ].

 B. Substantial experience in the practice of law [9.22(i) ].

7. If this Conditional Guilty Plea is not finally approved by the referee and the Supreme Court of Florida, then it shall be of no effect and may not be used against Respondent in any way.

8. If this plea is accepted, then the Respondent agrees to pay all costs associated with this case pursuant to R. Regulating Fla. Bar 3–7.6(q) for **$1,980.60.** These costs are due within 30 days of the Court order. Respondent agrees that if the costs are not paid within 30 days of this Court's order becoming final, the Respondent shall pay interest on any unpaid costs at the statutory rate. Further, Respondent acknowledges that if, unless otherwise deferred by the Board of Governors of The Florida Bar, the cost judgment is not satisfied within 30 days of the judgment becoming final, Respondent shall be deemed delinquent and ineligible to practice law, pursuant to R. Regulating Fla. Bar 1–3.6.

9. The Respondent further acknowledges his obligation to pay the costs of this proceeding and that payment is evidence of strict compliance with the conditions of any disciplinary order or agreement, and is also evidence of good faith and fiscal responsibility. Respondent understands that failure to pay the costs of this proceeding will reflect adversely on any reinstatement proceedings or any other bar disciplinary matter in which the Respondent is involved.

10. This Conditional Guilty Plea for Consent Judgment fully complies with all requirements of the Rules Regulating The Florida Bar.

Dated this 2nd day of *July*, 2010.

s/ Mark Felker Dahle

MARK FELKER DAHLE

Respondent

Attorney No. 716405

Dated this 2nd day of *July*, 2010.

s/ David R. Ristoff

584

DAVID R. RISTOFF
Counsel for Respondent
Attorney No. 358576
Dated this *2nd* day of *July,* 2010.
s/ Kenneth H.P. Byrk
KENNETH H.P. BRYK
Bar Counsel
Attorney No. 164186